UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Windage, LLC,

        Plaintiff,

v.

United States Golf Association,
and unnamed co-conspirators,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 07-4897 ADM/AJB

_____

Stanford P. Hill, Esq., Bassford Remele, P.A., Minneapolis, MN, argued on behalf of Plaintiff.

Lee N. Abrams, Esq., Mayer Brown, LLP, Chicago, IL, and Joseph W. Anthony, Esq., Anthony Ostlund Baer Louwagie & Ross, P.A., Minneapolis, MN, argued on behalf of Defendant United States Golf Association.

_____

## I. INTRODUCTION

On May 7, 2008, the undersigned United States District Judge heard oral argument on the Motion to Dismiss [Docket No. 8] brought by Defendant United States Golf Association ("USGA"). In its Complaint [Docket No. 1], Plaintiff Windage, LLC ("Windage") asserts an antitrust claim under the Sherman Act, 15 U.S.C. § 1, and the Minnesota antitrust statute, Minn. Stat. §§ 325D.52 and 325D.53. For the reasons set forth below, the USGA's Motion is granted.

## II. BACKGROUND[1]

The USGA is a non-profit association of golf clubs, golf courses, and individuals. Compl. ¶¶ 2, 10; Weight-Rite Golf Corp. v. U.S. Golf Ass'n, 766 F. Supp. 1104, 1107 (M.D. Fla.

___

[1] The factual allegations in the Complaint are taken to be true for the purposes of the USGA's Motion to Dismiss. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

1991).[2]  Since 1894, the USGA has functioned as the exclusive governing body of golf for the United States, its territories, and Mexico.  Compl. ¶ 9.  The Royal & Ancient Golf Club ("R&A") in St. Andrews, Scotland, functions as the governing body of golf for the rest of the world.  Id.  Together, the R&A and the USGA promulgate the Rules of Golf.  Id.  The stated purposes of the Rules of Golf are to preserve the traditions of golf and to ensure that a player's score is the product of skill, and not equipment.  Id. ¶ 12.  Thus, the Rules of Golf regulate the equipment used in the game of golf.  Id. ¶ 13.

The USGA applies the Rules of Golf in the thirteen national championships it conducts each year.  Weight-Rite, 766 F. Supp. at 1107.  The PGA Tour, Inc., and other entities conducting golf competitions are separate from the USGA.  Id. at 1108.  However, those entities usually apply the Rules of Golf.  Id.  Additionally, more than twenty thousand golf courses and twenty-five million golfers voluntarily follow the Rules of Golf.  Compl. ¶ 10.

Since 2006, Windage has manufactured the Windage device, a small, golf-ball-shaped plastic container with talc powder inside.  Id. ¶¶ 16-17.  A golfer can gauge wind direction by squeezing the Windage device to release a puff of talc power into the air.  Id. ¶ 17.  The product allows golfers to assess wind conditions without having to bend over to pluck grass to toss into the air.  Id.

On July 19, 2006, Windage submitted its device to the USGA for determination of

---

[2] A court "may take judicial notice of judicial opinions and public records." Stutzka v. McCarville, 420 F.3d 757, 761 n.2 (8th Cir. 2005).  The USGA asserts this court can take judicial notice of background facts described in Weight-Rite.  Def.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 10] at 4 n.1.  Windage did not oppose judicial notice in its brief.  This Court takes judicial notice of the background of the USGA as recited in the Weight-Rite decision.

whether the device conforms to the Rules of Golf. Id. ¶ 18. On August 17, 2006, USGA staff determined that the Windage device did not conform to Rule 14-3(b) because it was "an artificial device for the purpose of gauging or measuring conditions that might affect play." Id. ¶ 19. Rule 14-3(b) provides in relevant part that "[e]xcept as provided in the Rules, during a stipulated round the player must not use any artificial device or unusual equipment . . . [f]or the purpose of gauging or measuring distance or conditions that might affect his play[.] Id. ¶ 13.

Windage appealed the USGA staff's ruling to the USGA Equipment Standards Committee and the USGA Executive Committee. Id. ¶¶ 20-21. Both committees affirmed the USGA staff's determination that the Windage device does not conform to Rule 14-3(b). Id. ¶¶ 21-22.[3]

On December 19, 2007, Windage filed the instant lawsuit. Windage alleges that the USGA has arbitrarily applied the Rules of Golf to the Windage device to harm competition and stifle innovation in the markets for golf products that determine wind direction and for products that assist golfers with disabilities. Id. ¶¶ 26-27. Windage alleges that "the USGA, its members, affiliates, and those acting in concert," have engaged in a group boycott to restrain trade and inhibit research and development. Id. ¶¶ 29-30. Windage asserts that "retail stores, pro shops and other golf retailers have refused to stock the product specifically because it is not USGA approved, and the lack of approval is a major sales obstacle for retailers and manufacturers." Id. ¶ 43. Windage seeks damages under federal and state antitrust statutes, and a declaratory judgment that the Windage device conforms to the Rules of Golf. Id. ¶ 50.

---

[3] The USGA's decisions have not been made a part of the record.

### III. DISCUSSION

A.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

B.   **The Federal Antitrust Claims**

Windage alleges that the USGA's decision that the Windage device does not conform to the Rules of Golf violates § 1 of the Sherman Act, which provides that "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. The USGA argues that Windage has failed to adequately allege the existence of an illegal agreement.

The Supreme Court's 2007 decision in Bell Atlantic Corp. v. Twombly, addresses the pleading standard for § 1 claims. The Twombly plaintiffs' allegations of an illegal § 1 agreement rested exclusively on the parallel conduct of the defendant regional

telecommunications providers. 127 S. Ct. at 1970. Before 1996, the defendants had government-sanctioned regional monopolies for local telephone service, but could not compete in the competitive long-distance market. Id. at 1961. The Telecommunications Act of 1996, 110 Stat. 56, restructured local telephone markets by imposing duties on the defendants to facilitate new entrants. Id. The statute also allowed the defendants to enter the long-distance market and compete in each other's territories. Id. The Twombly plaintiffs' § 1 claims rested on the parallel conduct of the defendants in refraining from entering each other's markets and resisting new competition in their respective geographic markets. Id. at 1970.

In considering whether these claims survived a motion to dismiss, the Supreme Court stated that a § 1 claim must set forth "enough factual matter . . . to suggest that an agreement was made." Id. at 1965. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." Id. at 1966. Instead, allegations of parallel conduct "must be placed in a context that raises a suggestion of a preceding agreement, not merely conduct that could just as well be independent action." Id. Applying this standard, the Twombly plaintiffs' complaint was properly dismissed because defendants' parallel conduct was naturally explainable as the result of each defendant's independent decision to attempt to maintain its regional dominance. Id. at 1971-72. The Twombly Court cautioned that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 1965 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Windage argues that three paragraphs of its Complaint satisfy the Twombly standard of pleading facts that "suggest that an agreement was made." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss [Docket No. 12] at 4-5. Paragraph three alleges "upon information and belief" that the USGA "has engaged in a series of actions, agreements, understandings and/or arrangements with other individuals and entities whereby they have combined and conspired to participate in the conduct as set forth in this Complaint." Compl. ¶ 3. Paragraph twenty-nine asserts "[t]he actions of the USGA, its members, affiliates, and those acting in concert, including golf pro shops and specialty stores that have refused to sell the Windage product, all have the effect of restraining competition . . . ." Id. ¶ 29. Paragraph thirty-one alleges "[t]he actions of member[s] of the USGA and its affiliates, including golf pro shops and specialty golf equipment shops, constitute a contract, combination or conspiracy to unlawfully restrain trade in the ancillary golf products market." Id. ¶ 31.

Neither these paragraphs, nor the remainder of Windage's Complaint, provide a factual context to suggest an agreement. While the quoted paragraphs, like the allegations in Twombly, allege a conspiracy in form, the only facts provided are that the USGA determined that Windage's device does not conform to the Rules of Golf and unidentified golf retailers have refused to sell the device. However, Windage does not provide a plausible factual context in which the USGA, golf pro shops, and golf retailers would conspire to interpret the Rules of Golf to exclude Windage's product. Windage does not allege that the USGA or the golf retail stores are direct competitors of Windage, or that they have a financial incentive to interpret the Rules of Golf to exclude Windage's device. Although Windage alleges a group boycott, the golf retailers' decisions not to stock the Windage device could just as well be independent self-

interested behavior in response to golfers' desire to play with products that conform to the Rules of Golf, as Windage itself avers in the Complaint. Compl. ¶ 40. Windage has not alleged that the USGA, a non-profit entity, and its unnamed co-conspirators support a competitor of Windage, or that they have an economic motivation to exclude the Windage device. Therefore, the golf retailers' parallel refusals to sell the Windage device does not create a plausible inference that the USGA and the golf retailers reached a preceding agreement.

Windage's reliance on this Court's decision in Fair Isaac Corp. v. Equifax, Inc., Civ. No. 06-4112, 2008 WL 623120 (D. Minn. March 4, 2008), is misplaced. Fair Isaac alleged that the defendant credit bureaus agreed to take anticompetitive actions that would support their joint venture credit scoring corporation. This Court denied the credit bureaus' motion to dismiss because the close temporal proximity between the creation of the credit bureaus' joint venture and the start of the parallel anticompetitive conduct provided a "context that raises a suggestion of a preceding agreement." Id. at *6 (quoting Twombly, 127 S. Ct. at 1966). The case at bar is distinguishable because although Windage alleges golf pro shops have refused to sell its product, Windage has not alleged any facts that suggest a preceding agreement.

Windage asserts that the USGA has made an exception to Rule 14-3(b) to allow the use of laser and Global Positioning System ("GPS") that measure distance in certain circumstances. Compl. ¶ 28. Windage contends it is "arbitrary," "inconsistent," "unfair," "unreasonable," and "unjustified" for the USGA to make an exception to Rule 14-3(b) for distance devices while excluding wind devices. Compl. ¶¶ 38, 43. However,

> So long as [the USGA] made game-defining rules decisions based upon its purpose as a sports organization, an antitrust court need not be concerned with the rationality or fairness of those decisions. Irrational decisions and unfair treatment of suppliers will result in an unpopular game, and players and spectators will take

their entertainment dollars elsewhere.

Brookins v. Int'l Motor Contest Ass'n, 219 F.3d 849, 854 (8th Cir. 2000). Although Windage is dissatisfied with the USGA's ruling and golf retailers' reluctance to sell the Windage device, it cannot proceed to costly antitrust discovery by conclusorily labeling the conduct as a conspiracy and a group boycott.

The Court grants the USGA's Motion to Dismiss Windage's claims under § 1 of the Sherman Act.[4]

**C.     The State Antitrust Claims**

"Minnesota antitrust law is generally interpreted consistently with federal antitrust law." Lorix v. Crompton Corp., 736 N.W.2d 619, 626 (Minn. 2007). Windage and the USGA agree that the analyses of Windage's federal and state antitrust claims are identical. Def.'s Mem. in Supp. of Mot. to Dismiss at 19-20; Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 12. The Court dismisses Windage's state antitrust claim for the same reasons discussed in assessing Windage's federal claim.

**D.     Declaratory Judgment**

The Declaratory Judgment Act provides in relevant part that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act does not provide an independent basis for federal

---

[4] Because Windage has not adequately alleged an agreement, it is unnecessary to address the USGA's argument that Windage has not sufficiently pleaded a relevant market or an antitrust injury.

jurisdiction." Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc., 977 F.2d 1224, 1227 (8th Cir. 1992) (citation omitted).

Windage seeks a declaratory judgment that the USGA's decision regarding the Windage device was arbitrary and capricious, and that the device conforms to Rule 14-3(b) of the Rules of Golf. Windage asserts that its declaratory judgment claim is a distinct cause of action that is independent from the antitrust claims. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 12. Although federal and Minnesota statutes provide a cause of action for violation of the antitrust laws, there is no independent cause of action premised on interpretation of the Rules of Golf. Therefore, this Court has neither federal question jurisdiction nor diversity jurisdiction over Windage's declaratory judgment claim. Windage's declaratory judgment claim is dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant United States Golf Association's Motion to Dismiss [Docket No. 8] is **GRANTED**; and

2. Plaintiff Windage, LLC's Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 2, 2008.